The Honorable Thomas S. Zilly

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| AMICHAI OHRING, individually and on behalf of other similarly situated individuals,<br><br>    Plaintiff,<br><br>vs.<br><br>UNISEA, INC.; and DOES 1-100<br><br>    Defendants. | Case No. 2:21-CV-00359-TSZ<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>NOTE ON MOTION CALENDAR: October 18, 2024 |

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

   A.   Factual Allegations ................................................................................ 1

   B.   Procedural Background ......................................................................... 3

   C.   The Parties Reach an Agreement .......................................................... 4

   D.   Preliminary Approval Granted on November 9, 2023 .......................... 6

   E.   Settlement Administrator Fails to Send Timely Notice to Class members.................. 7

   F.   Notice of Settlement Was Successfully Distributed ............................... 7

III.  ARGUMENT .................................................................................................. 9

   A.   The Settlement is Fair, Reasonable, and Adequate ............................... 9
      1.   Plaintiffs and Their Counsel Have Adequately Represented the Class ......................... 9
      2.   The Proposed Settlement Was Negotiated at Arm's Length ............... 10
      3.   The Relief Provided for the Class is Adequate ................................ 11
      4.   The Proposed Settlement Treats Class Members Equitably .................. 14

   B.   The Settlement Class Should Be Certified ........................................... 14
      1.   The Settlement Class Meets the Requirements of Rule 23(a) .................... 15
      2.   The Class Merits Certification under Rule 23(b)(3) for Settlement Purposes............. 17
      3.   The Settlement Class Should Be Certified as a Collective Action under the FLSA Because It Meets Class Certification Requirements .............................. 18

   C.   The Notice Disseminated Met All Applicable Requirements........................ 19
      1.   Reasonable Efforts Taken to Identify Class Members ............................... 19
      2.   Due Process Rights of Class Members Were Adequately Protected.......................... 20

IV.   CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**CASES**

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) .................................................................. 12

*Arthur v. Sallie Mae, Inc.*, No. 10-cv-00198-JLR, 2012 WL 4076119 (W.D. Wash. Sep. 17, 2012) ...................................................................................................................................... 13

*Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004)............................................ 16

*Beltran v. Olam Spices & Vegetables, Inc.*, No. 18-cv-1676, 2021 WL 1105246 (E.D. Cal. Mar. 23, 2021) .................................................................................................................................... 18

*Bolding v. Banner Bank*, 2024 WL 755903 (W.D. Wash. Feb. 23, 2024) .................................. 13

*Brown v. Papa Murphy's Holdings Inc.*, 2022 WL 1303176 (W.D. Wash. May 2, 2022) .......... 13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................................. 17

*Collins v. Gee W. Seattle, LLC*, No. C08-0238 MJP, 2009 WL 10725362 (W.D. Wash. May 11, 2009)...................................................................................................................................... 15

*De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003)................................................. 16

*Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. Apr. 10, 2015) .................................... 15

*Haight v. Wackenhut Corp.*, 692 F. Supp. 2d 339 (S.D.N.Y. 2010)........................................... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... 15, 16, 17, 18

*Hudson v. Libre Tech. Inc.*, No. 18-cv-1371, 2019 WL 5963648 (S.D. Cal. Nov. 13, 2019)...... 18

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553 (W.D. Wash. 2004)...... 10

*In re Prudential Ins. Co. of America Sales Practices Litigation*, 177 F.R.D. 216 (D.N.J. 1997) 21

*Johnson v. Quantum Learning Network, Inc.*, No. 15-CV-5013, 2016 WL 8729941 (N.D. Cal. Aug. 12, 2016) .......................................................................................................................... 19

*Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984) ........................................................... 12

*Linney v. Cellular Ala. P'ship*, 151 F.3d 1234 (9th Cir. 1998). ................................................ 10

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ...................................... 20

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ..................................................................... 10

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ....................................................................... 16

*Smith v. Kaiser Found. Hosps.*, No. 18-cv-780, 2019 WL 5864170 (S.D. Cal. Nov. 7, 2019).... 19

*Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434 (W.D. Wis. May 5, 2008) ....................... 16

*Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642 (W.D. Wash. 2011)............................... 18

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................. 15

**RULES**

Fed. R. Civ. P. 23 ....................................................................................... 9, 14, 17, 19

Fed. R. Civ. P. 23(a) ............................................................................................ 15, 16

Fed. R. Civ. P. 23(e) ............................................................................................. 9, 11

PLAINTIFF'S MOTION
FOR FINAL APPROVAL OF
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

ii

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

## I.    INTRODUCTION

Plaintiff Amichai Ohring represents a class of seafood processing workers who were employed by Defendant UniSea, Inc. ("Defendant") at a seafood processing facility in Alaska. Plaintiff alleges that Defendant required him and his coworkers to spend time donning and doffing gear without paying them for the time it took to dress in the mandatory gear. As a result, Plaintiff brought claims under the Fair Labor Standards Act (FLSA) and the Alaska Wage and Hour Act (AWHA), alleging that putative Class Members were denied full pay for all hours worked.

In April 2023, after nearly two years of investigation, litigation, and negotiation, the parties reached a class wide settlement. After significant further negotiation, the settlement was amended and preliminarily approved by the Court. The proposed $600,000 settlement will result in significant relief for the class given the difficulty of prevailing on a class-wide basis in light of the Ninth Circuit's ruling. Class Member response to the settlement since preliminary approval has been overwhelmingly positive. To date, no Class Member has objected to the Settlement and only 12 of the 1,922 Class Members have opted out, demonstrating overwhelming support for Plaintiff and Class Counsel's efforts.

For the reasons set forth herein, Plaintiff respectfully requests that the Court enter an order granting final approval of class settlement. Plaintiff also seeks an order granting Class Counsel attorneys' fees in the amount of $180,000.00 and litigation costs in the amount of $2,212.52. The fee award sought is fair, reasonable and justified, given the amount of hours Counsel dedicated to researching, litigating, and negotiating this case. Plaintiff seeks a service award in the amount of $5,000 to Plaintiff Amichai Ohring, which is appropriate in light of Plaintiff's involvement in this action, including conducting investigations, liaising with Class Members, reviewing documents, and reviewing and approving the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

Plaintiff alleges that Defendant UniSea, Inc. deprived him and members of the putative Class from their rightful wages by failing to pay these seasonal seafood processing workers for all

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

1

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

hours worked, including hours spent retrieving, donning, and doffing work-related gear, in violation of the Fair Labor and Standards Act ("FLSA") and Alaska Wage and Hour Act ("AWHA"). Dkt. 1, Plaintiff's Class Action Complaint, ¶¶ 7–16, 27–34.

At the beginning and end of each shift in the facility, and before and after breaks, Plaintiff and putative Class Members were required by Defendant to don and doff protective gear, including rain gear, boots, multiple sets of gloves, and other safety equipment. Dkt. 1, ¶ 10. Before clocking in, Class Members spent approximately five to ten minutes donning the gear, after which they were each checked in—one at a time—before being permitted to clock in. *Id.* ¶ 11. Before clocking out, they spent another five to ten minutes removing their soiled gear. *Id.* ¶ 12. As workers clocked in and out to take breaks, they followed the same donning and doffing routine. *Id.* ¶ 13. Workers could spend up to forty unpaid minutes per day donning and doffing gear. *Id.*

Defendant denied these allegations, contending that Plaintiff's experience was not representative because the time spent donning and doffing varied among putative Class Members. Dkt. 15, Answer ("Answer"), ¶¶ 11–12. Defendant further alleged that the donning and doffing time was a *de minimis* amount. *Id.*, ¶ 22. Moreover, Defendant alleged that much of the protective gear described by Plaintiff was not required nor integral to work performed by putative Class Members. *Id.*, ¶¶ 20–21. Accordingly, Defendant contended that the time spent donning and doffing was not compensable. *Id.*, ¶¶ 22–23.

About eight months after Plaintiff commenced this lawsuit, Defendant relocated the time clocks used by workers to clock in and out at the facility such that the amount of time workers spent donning and doffing decreased significantly (and perhaps was eliminated completely). Prior to this change, the time clocks used by Plaintiff and Class Members in one of the two buildings were located by the warehouse entrance. This required workers to walk a significant distance from the locker rooms to the warehouse entrance to clock in. On or around November 17, 2021, the time clocks were relocated to the locker rooms so that workers could clock in where they donned their gear. Dkt. 66-1, Settlement Agreement, ¶ 34(c)(i). This effectively cut off damages from that point forward. *Id.*

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

2

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

### B.    Procedural Background

Plaintiff filed this class action in March 2021. In the five months prior to filing the initial Complaint, and throughout litigation, Class Counsel engaged in extensive investigation, including communications with Class Members to determine the scope and specifics of the allegations. Declaration of Shounak S. Dharap in Support of Plaintiff's Motion for Final Approval ("Dharap Decl."), ¶ 4.

After the case was filed, Class Counsel met and conferred with counsel for Defendant. Dharap Decl., ¶ 5. Defendant provided Class Counsel with a copy of the arbitration agreement signed by Plaintiff, contending that Plaintiff's class claims were barred under a waiver included in the agreement. *Id*. In anticipation of Defendant's motion to compel arbitration, Class Counsel thoroughly analyzed the arbitration agreement for potential challenges to enforceability, engaging in legal research, and interviewing Plaintiff and Class Members regarding the circumstances surrounding the execution of their agreements. *Id*., ¶ 6. Class Counsel continued to research the execution of agreements while drafting Plaintiff's opposition to Defendant's motion to compel. *Id*., ¶ 7.

Around the same time, in May 2021, counsel for the parties conducted their Rule 26(f) conference, after which Class Counsel drafted and served initial written discovery requests. Dharap Decl., ¶ 7.

In July 2021, the Court issued its order denying Defendant's motion to compel arbitration. Dkt. 34. Defendant immediately appealed the decision and moved to stay the case. Dharap Decl., ¶ 8.

Before making oral arguments to the Ninth Circuit, the parties participated in mediation through the Ninth Circuit Mediation Program with experienced Circuit Mediator Chris Goelz. Dharap Decl., ¶ 9. Class Counsel drafted an extensive mediation brief that included detailed analysis of the factual and legal issues of the merits and class certification, as well as the issues pending on appeal. *Id*. After the parties exchanged briefs in preparation of mediation, Class Counsel analyzed Defendant's mediation brief. *Id*. Along with co-counsel, Class Counsel devised

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

3

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

a strategy for responding to potential settlement offers and conducted data analysis to determine a range of demands. *Id*. However, after the initial mediation, the parties did not reach a settlement.

Negotiations continued throughout the appellate briefing period. Dharap Decl., ¶ 10. A second mediation was scheduled but, after informal negotiations failed, the mediation was cancelled and oral argument proceeded. *Id*. After hearing oral arguments, on May 20, 2023, the Ninth Circuit reversed the Court's order and remanded with instructions to stay the case while an arbitrator determined the threshold question of the enforceability of the subject arbitration agreement. Dkt. 45.

Despite the Ninth Circuit's order compelling Plaintiff to arbitration, Class Counsel was determined to find a way to seek class wide relief. Class Counsel decided upon a multi-pronged approach: Class Counsel prepared to file a demand for class arbitration, anticipating an argument by Defendant that the arbitration agreement at issue precluded such an action; and prepared to file a motion for declaratory relief in conjunction with the arbitration demand for the arbitrator to consider arguments regarding the enforceability of the agreement and, in the alternative, the viability of a class arbitration pursuant thereto. Dharap Decl. ¶ 10.

### C.    The Parties Reach an Agreement

Since the parties had exchanged extensive information and data relating to Class Members' work histories as well as lengthy mediation and appellate briefs over the course of almost a year, the parties resurrected settlement negotiations. Dharap Decl., ¶¶ 4–11. Although Defendant vehemently argued that Plaintiff would not prevail on either the class arbitration demand or declaratory relief—thereby forcing individual-only arbitrations—the parties reached an agreement in principle to settle the action on a class wide basis several months after the Ninth Circuit's order. *Id*., ¶ 11.

After numerous rounds of editing and negotiating terms of the Settlement, the parties finalized a Settlement Agreement in December 2022. Dharap Decl., ¶ 11. The Settlement Agreement was amended twice in accordance with the Court's orders (Dkts. 57, 62), and the final amended Settlement Agreement was executed on August 4, 2023. Dharap Decl., ¶ 12.

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

4

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

The terms of the Settlement are detailed in the Settlement Agreement, which fully resolves the claims of the Class against Defendant. The essential terms are as follows:

- Defendant will pay an all-in amount of $600,000 ("Gross Settlement Fund") in exchange for the settlement and release of the claims asserted in this matter. Dkt. 66-1, Settlement Agreement, ¶¶ 20, 30, 55–58.

- The AWHA Class Members are defined as each individual who worked for Defendant as a "seafood processor" during the period from March 16, 2019 to November 17, 2021, and who did not timely opt out of this action. Dkt. 66-1, ¶¶ 12, 15.

- The FLSA Class Members are defined as each individual who worked for Defendant as a "seafood processor" during the period from March 16, 2018 to November 17, 2021, and who timely opts into this action. *Id*.

- Class Counsel requests an award of attorneys' fees of up to $180,000 (30% of the Gross Settlement Fund) plus actual expenses of litigation in the amount of $2,212,52. *Id*., ¶ 20.

- The Settlement Administrator will be paid settlement administration costs, not to exceed $32,000. Dkt. 65, Joint Status Report; Dkt. 71, Motion for Attorney Fees, Costs and Service Award.

- Subject to the Court's approval, up to $5,000 of the settlement fund will be paid as a "Service Award" to Plaintiff Ohring in recognition of his service to the Settlement Class Members. Dkt. 66-1, ¶ 33; Dkt. 71, Motion for Attorney Fees, Costs and Service Award.

- The monetary distribution to Class Members will be based upon the following calculation: The Settlement Administrator will calculate the number of Hours Worked by each Participating Class Member during the Class Period, which will be divided by the total hours worked by all Participating Class Members. This calculation will result in a percentage figure for each Participating Class Member,

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

5

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

which will then be multiplied by the Net Settlement Amount, with the resulting figure being paid to the Participating Class Member. Dkt. 66-1, ¶ 34(c)(i).[1]

- If a Participating Class Member does not cash their check within 120 days, any amounts associated with that Class Member's uncashed check will be distributed via a second round of settlement checks. Dkt. 66-1, ¶ 31. The second round of checks will be distributed on a pro-rata basis to Participating Class Members who cashed their initial settlement check. *Id.*, ¶ 37.

- If there are any remaining funds in the Net Settlement Amount twelve months after the Effective Date, the parties will meet and confer to determine the best practicable option for distributing those funds. *See* Dkt. 66-1, ¶ 31. There will be no reversion of funds to Defendant.

Considering the risks of further litigation, and after evaluating the factual and legal defenses available to Defendant should the case proceed to arbitration, Plaintiff and his Counsel determined that the proposed Settlement is a laudable result for the Settlement Class Members.

### D.    Preliminary Approval Granted on November 9, 2023

Class Counsel drafted and filed their motion for preliminary approval in May 2023. Dkt. 52. The Court ordered the parties to meet and confer to address specific issues in relation to the motion. *See* Dkt. 62. As directed by the Court, the parties amended the Settlement Agreement and submitted three subsequent Joint Status Reports addressing issues raised by the Court, including FLSA claims and opt-in procedures, class notice, and class notice dissemination. *See* Dkt. 58, 65, 68.

Finally, on November 9, 2023, the Court granted preliminary approval of the proposed class settlement and preliminarily appointed Amichai Ohring as Class Representatives, Shounak Dharap and Julie Erickson as Class Counsel, and Phoenix Settlement Administrators ("Phoenix")

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings ascribed to them as in the Settlement Agreement.

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

6

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

as Settlement Administrator. *See* Dkt. 69. In accordance with the Court's order, Class Counsel made corrections to the notice.

### E.    Settlement Administrator Fails to Send Timely Notice to Class members

The Settlement Administrator, Phoenix, mailed out notices to 1,014 Class members on December 22, 2023. Declaration of Jarrod Salinas, ¶ 7. At the time of mailing, 103 Class Members were currently employed by Defendant. *See* Declaration of Denise Eam Regarding Class Members ("Eam Decl.") ¶¶ 2–3. Phoenix emailed notices to UniSea for printing and distribution at UniSea's Dutch Harbor facility where the current employees resided. Salinas Decl., ¶ 7; Declaration of Ricardo Rodea Regarding Delivery of Class Notices to Current Employees ("Rodea Decl."), ¶¶ 3–6. On December 22, 2023, Phoenix also sent text messages to 34 Class Members who did not have a mailing address on file, and whose cell phone numbers were available. Salinas Decl., ¶ 7. There were also 767 Former Class Members for whom only email addresses were provided. Salinas Decl., ¶ 4; Eam Decl., ¶ 3. Phoenix was to send these Class Members notice via email, but failed to do so. Salinas Decl., ¶ 12. Class Counsel was alerted to this failure and sought the Court's approval to extend the notice period to permit proper and successful notice to these Class Members. Dkt. 80. The Court approved the corrected notice and plan. Dkt. 81.

### F.    Notice of Settlement Was Successfully Distributed

On April 24, 2024, Phoenix emailed the corrected Notice Packets to the 767 Former Employee Class Members with email addresses on file. Salinas Decl., ¶ 13. The Notice Packet was revised to provide a response deadline of August 30, 2024 for (i) opting into the FLSA collective action, (ii) opting out of the AWHA Class, and/or (iii) submitting a written objection to the proposed settlement, and to advise Class Members that the Final Approval Hearing would be held October 25, 2024, at 1:30 p.m. *Id*., ¶ 13.  The FLSA opt-in and AWHA opt-out forms, which accompanied the revised Notice, were also updated to reflect the new response deadline. *Id*., ¶ 13. Phoenix also mailed corrective postcards to Class Members for whom mailing addresses were provided, and emailed corrective postcards to employees with email addresses currently on file as well as those currently working at UniSea's Dutch Harbor facility. *Id*., ¶¶ 15–17.  The corrective

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

7

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

postcards informed all Class Members of (1) the Final Approval Hearing had been continued to October 25, 2024, at 1:30 p.m.; (2) Class Counsel's fee petition was available on the settlement website; and (3) the response deadline for (i) opting into the Fair Labor Standards Act ("FLSA") collective action, (ii) opting out of the Alaska Wage and Hour Act ("AWHA") Class, and/or (iii) submitting a written objection to the proposed settlement and Class Counsel's fee petition was extended to August 30, 2024. *Id.* Lastly, Phoenix sent corrective text messages to the 34 Class Members who were previously provided notice of the settlement via text message. The corrective text message advised them that the Final Approval Hearing had been continued to October 25, 2024, at 1:30 p.m. *Id.*, ¶ 14.

As of September 26, 2024, 160 Notice Packets were returned by the post office, for which the Settlement Administrator performed an advanced address search. *Id.*, ¶ 9. By the end of the notice period and after skip-tracing for undeliverables, 150 notices were remailed and only 10 notices ultimately were undeliverable after re-mailing. *Id.*, ¶¶ 9–10. By the extended deadline of August 30, 2024, Phoenix received a total of 12 Requests for Exclusion from AWHA Class Members. *Id.* ¶¶ 11, 18. There are 1,590 AWHA Class Members who did not submit timely and valid Requests for Exclusion and are therefore deemed Settlement Class Members. *Id.*, ¶ 19. As of the date of Mr. Salinas's declaration, Phoenix had received a total of 119 Opt-Ins from FLSA Class Members. *Id.*, ¶¶ 11, 20. As of the date of Mr. Salinas's declaration, Phoenix had received zero Notices of Objection from Class Members. *Id.*, ¶ 21.

Phoenix also hosted and monitored a Settlement Website ("the Website") that has been accessible to all Class Members from December 22, 2023, to the present. Salinas Decl., ¶ 22. The corrective postcards sent in April 2024 alerted Class Members that these documents were accessible on Phoenix's website. Salinas Decl., ¶¶ 15, 22. The following documents are available on the Website:

- Complaint, *Ohring v. UniSea* (3/16/2021)
- Original Joint Settlement Agreement and Release (4/6/2023)
- Settlement Agreement (Dkt. 66-1)
- Minute Order (unable to preliminarily approve the proposed settlement 6/14/2023)
- Order Granting Preliminary Approval (11/8/2023)
- Order (Document 69 filed 11/9/2023)

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

8

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

- Notice of Class Action Settlement
- FLSA Opt-in Form
- AWHA Opt-out Form
- Plaintiff's Motion for Attorneys' Fees (Dkt. 71)
- Order Granting Parties' Stipulated Motion for Extension of Time (Dkt. 79)
- Minute Order re Proposed Corrective Notice (Dkt. 81)

Salinas Decl., ¶ 22.

## III.    ARGUMENT

Class action settlements are approved in three stages: (1) preliminary approval, (2) dissemination of class notice, and (3) final approval in light of the class response. *See* Fed. R. Civ. P. 23; *Newberg on Class Actions* § 13:1 (5th ed). Here, the Court has granted preliminary approval and notice has been disseminated. All that remains for Class Members to receive payment pursuant to the settlement is final approval by this Court.

Federal Rule of Civil Procedure 23 requires the Court to determine (1) whether this settlement is "fair, reasonable, and adequate" in light of Class Members' responses under Rule 23(e); (2) whether the provisionally certified settlement class should be certified for purposes of judgment under Rule 23(a) and (b)(3); and (3) whether the notice issued to the class met the requirements of Rule 23(c). *See* Fed. R. Civ. P. 23(e). This Class readily meets these requirements.

### A.    The Settlement is Fair, Reasonable, and Adequate

Under Rule 23(e)(2), courts must consider procedural and substantive fairness when determining whether a settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Notes. The two procedural concerns are whether plaintiffs and their counsel have adequately represented the class and whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(A)-(B). The two substantive concerns include whether the relief provided for the class is adequate and whether the proposed settlement treats Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(C)–(D). All four concerns weigh in favor of approval here.

### 1.    Plaintiffs and Their Counsel Have Adequately Represented the Class

The focus of adequate representation is the "actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2), Adv. Comm. Note. One of the hallmarks of adequate

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

9

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

1    representation is a thorough investigation and assessment of the Class Members' claims. *Id.*

2    Formal discovery is not required, but counsel should have sufficient information to make

3    informed decisions at the bargaining table. *Linney v. Cellular Ala. P'ship*, 151 F.3d 1234, 1239

4    (9th Cir. 1998).

5        Here, Class Counsel conducted early investigation, obtained discovery that went to the

6    heart of the case, reviewed blueprints, photographs, videos, and extensive spreadsheets detailing

7    clock in and out data for the Class. Dharap Decl., ¶ 9. They also interviewed Class Members and

8    consulted with a subject matter expert. Dharap Decl., ¶ 5. This preparation, enabled Class Counsel

9    to negotiate a beneficial settlement for Class Members.

10        Since preliminary approval was granted, Class Counsel have performed significant and

11   intensive work on behalf of the Class, including addressing additional concerns regarding work

12   conditions, assisting Class Members with questions about the Settlement, and making corrections

13   as directed by the Court regarding notice and settlement procedures. Dharap Decl., ¶ 21. Class

14   Counsel has also worked closely with Phoenix Settlement Administrators to ensure reasonable and

15   effective communication with Class Members. *Id.*

16        **2.    The Proposed Settlement Was Negotiated at Arm's Length**

17        When a settlement has resulted from arm's length negotiations conducted by competent

18   counsel after appropriate discovery, a court begins its analysis with a presumption that the

19   settlement is fair and reasonable. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999); *In re*

20   *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004). This

21   Court found that there was no evidence "of any fraud, collusion, overreaching, or disregard of the

22   rights of putative FLSA plaintiffs or absent AWHA Class Members on the part of any party" in

23   granting preliminary approval of Settlement. Dkt. 69, p. 9.

24        After an unsuccessful mediation through the Ninth Circuit Mediation Program, the parties

25   proceeded to oral argument before the Ninth Circuit. Dharap Decl., ¶ 10. The Ninth Circuit

26   reversed and remanded the ruling on Defendant's motion to compel arbitration and ordered the

27   parties to arbitrate the dispute. *See* Dkt. 45, 48. In lieu of expensive and lengthy arbitration, the

28   PLAINTIFF'S MOTION
     FOR FINAL APPROVAL
     OF CLASS SETTLEMENT
     CASE NO. 2:21-cv-00359-TSZ

                                        10

     Tousley Brain Stephens PLLC
     1200 Fifth Ave, Ste 1700
     Seattle, WA 98101
     Tel.: (206) 682-5600

parties continued settlement discussions and reached a tentative agreement in December 2022. Dharap Decl., ¶ 11.

After multiple amendments to the terms of the Settlement, the Court granted preliminary approval on November 9, 2023, finding that the Settlement was "fair, adequate, and reasonable." Dkt. 69, p. 9. Taking into consideration both Class Counsel's preparation for mediation, oral argument, and the involvement of a highly qualified court-appointed mediator, the parties' proposed settlement should be viewed as procedurally fair. Fed. R. Civ. P. 23(e)(2)(B), 2018 Adv. Comm. Note.

### 3.    The Relief Provided for the Class is Adequate

Under the Settlement, Defendant will pay a total of $600,000. Approximately $380,787.48 of that Gross Fund will go directly into the hands of the Settlement Class Members (the Net Settlement Fund).[2] Dkt. 66-1, ¶ 34. The Net Settlement Fund will be distributed by checks mailed directly to Class Members after the Settlement is fully funded. *Id.* A second round of distribution of funds from uncashed checks will follow to ensure that the Net Settlement Fund is distributed to Settlement Class Members to the greatest extent practicable. *Id.*, ¶ 31. None of the settlement funds will revert back to Defendant. *Id.*

No Class Member has objected to the amount of the Settlement or their estimated individual payment. Salinas Decl., ¶ 21. Nor has any Class Member objected to the proposed plan of allocation. *Id.* Approximately 119 FLSA Class Members have opted in as of the August 30, 2024 response deadline; 12 requests for exclusion have been received from AWHA Class Members; and only 10 Notice packets remained undeliverable. Salinas Decl., ¶¶ 10, 18, 20. In Class Counsel's experience, this indicates the Class's satisfaction with the Settlement.

#### a)    The Costs, Risks, and Delay Associated with Further Litigation

Defendant adamantly denied wrongdoing and raised numerous challenges to the action that presented risks to Plaintiff's chance of prevailing despite his strong belief in the merits of his

---

[2] The Net Settlement Fund is approximately 63% of the gross Settlement in anticipation of approximately $32,000 to be paid to the settlement administrator, $180,000 to be paid in attorneys' fees and $2,212.52 to be paid in costs pursuant to the concurrent motion, and $5,000 to be paid to Named Plaintiff as a service award.

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

11

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

claims. First, Plaintiff faced significant risk in achieving any class recovery following the Ninth Circuit's order compelling arbitration—if the arbitrator determined the agreement was enforceable, Plaintiff would be precluded from bringing his claims on a class-wide basis.

Plaintiff also faced significant risk in certifying a class and prevailing on the merits of his claims. To prevail on the merits, Plaintiff faced the difficult task of proving: (1) the time Plaintiff and the Class Members spent donning and doffing protective gear; (2) that this time spent donning and doffing by Plaintiff and the Class was compensable under the FLSA and AWHA; and (3) that Defendant failed to fully compensate Plaintiff and the Class Members for all hours worked.

Defendant maintained its compliance with the FLSA and Alaska law and adamantly contested Plaintiff's claims. Defendant produced evidence showing that the location of clocks at its facility had been moved since the filing of the lawsuit to decrease the amount of time seafood processors expend clocking in and out. Dharap Decl., ¶ 9. Defendant contended that many of the items of gear (hard hats, ear plugs, safety goggles, hair nets, and boots) were non-unique, making time spent donning and doffing them non-compensable. *Id*.; *see Alvarez v. IBP, Inc.*, 339 F.3d 894, 899, n. 2 (9th Cir. 2003); *Haight v. Wackenhut Corp.*, 692 F. Supp. 2d 339, 344-45 (S.D.N.Y. 2010). Moreover, Defendant provided documentary and video evidence supporting that some workers spent as little as five minutes per day donning and doffing gear—an amount of time that has been held by the Ninth Circuit to be *de minimis* and noncompensable under the FLSA. *See Lindow v. United States*, 738 F.2d 1057, 1063-64 (9th Cir. 1984) (observing a benchmark of a minimum of 10 minutes for compensable times). Defendant's arguments equally applied to the FLSA and state law claims.

Coupled with the substantial cost and delay associated with arbitrating the enforceability of the arbitration agreement, moving for class certification, dispositive motion practice, and trial on the merits, these risks were seriously considered in the course of settlement.

  *b)*  *The Distribution of the Settlement Fund is Designed to Be Effective*

The $600,000 settlement fund will be used to compensate Settlement Class Members, pay a service award to the Named Plaintiff, pay attorneys' fees to Class Counsel and reimburse

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

12

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

litigation expenses, and pay for settlement administration costs. None of the settlement funds will revert to Defendant. The initial round of settlement payments will be disbursed to Settlement Class Members, and any funds remaining after the expiration of time to cash the initial settlement checks will be re-disbursed to Class Members via a second round of distribution of checks to ensure that the Net Settlement Fund is distributed to Settlement Class Members to the greatest extent practicable. Ex. 1, ¶ 31.

c)    *The Terms Regarding Proposed Attorneys' Fees Are Reasonable and Have Met No Objection*

Class Counsel seeks attorneys' fees through a separate Fee Petition to the Court filed on January 8, 2024, which included detailed descriptions of their hours, rates, and expenses. Dkt. 71. The Fee Petition set forth the legal justification for applying the percentage of recovery method and evidentiary support for the requested fees. *Id*. For purposes of this Motion, the Court should consider the reasonableness of the Settlement's terms regarding attorneys' fees as it pertains to the overall adequacy, fairness, and reasonableness of the Settlement as a whole. The Settlement Agreement provides that Class Counsel will request an award of attorneys' fees up to $180,000, or 30% of the settlement fund, and up to $5,000.00 for actual expenses of litigation. Ex. 1, ¶ 32. These provisions are presumptively reasonable and the fees requested are less than the district benchmark in class contingency cases. *See Bolding v. Banner Bank*, 2024 WL 755903, at *2 (W.D. Wash. Feb. 23, 2024) ("a 33% fee is standard and reasonable for this type of contingency case."); *Brown v. Papa Murphy's Holdings Inc.*, 2022 WL 1303176, at *2 (W.D. Wash. May 2, 2022) (awarding 31.5% and finding that "30% should be the benchmark"). Moreover, the Notice program informed the 1,922 Settlement Class Members that Plaintiff would request an award of attorneys' fees in the amount of $180,000 and there were no objections. Salinas Decl., ¶¶ 11, 15, 21. In light of case law approving attorneys' fees awards equal to 30% of a common fund, the significant monetary recovery secured by this Settlement, and the positive reaction and support of Settlement Class Members, the Court should find the attorneys' fees and costs provisions favor the approval of the proposed Settlement under Rule 23(e)(2)(C)(iii). *See, e.g., Arthur v. Sallie Mae, Inc.*, No.

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

13

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

10-cv-00198-JLR, 2012 WL 4076119 (W.D. Wash. Sep. 17, 2012 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002) ("Factors that federal courts in the Ninth Circuit use to determine the reasonableness of fees under the percentage-of-the-fund approach include: (1) the results achieved (including results beyond the benefits of a cash fund); (2) the risk involved with the litigation; (3) the contingent nature of the fee; and (4) awards made in similar cases.")).

### 4.  The Proposed Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) states that a court should consider whether "the proposal treats Class Members equitably relative to each other." This factor is intended to ensure that a proposed settlement does not include "inequitable treatment of some Class Members vis-à-vis others." Fed. R. Civ. P. 23, Adv. Comm. Notes. The proposed Settlement treats all segments of the Settlement Class fairly and thus, satisfies this factor.

Under the Settlement Agreement, the Net Settlement Fund will be divided among the Settlement Class Members based on the number of hours they worked divided by the sum of all hours worked by the Class during the class period. *See* Dkt. 66-1, ¶ 34. This calculation was provided to each Class Member in the Class Notice with an opportunity to object to the amount of hours reported by Defendant. *Id.* Any uncashed checks at the end of the cashing period will be divided similarly amongst the Class Members who deposited their checks—the remaining amount will be based on the hours worked by each depositing Class Member, divided by the sum of all hours worked by all depositing Class Members. *Id.*, ¶ 37.

No Class Member is treated differently from any other under the Settlement Agreement. Each Settlement Class Member will receive a share of the settlement funds based upon the objective criterion of the number of hours worked within the class period. Therefore, this manner of distribution of the Settlement treats each Class Member fairly and equitably.

### B.  The Settlement Class Should Be Certified

Under Rule 23(a), Plaintiff must demonstrate: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1. The Settlement Class Meets the Requirements of Rule 23(a)

#### a) Numerosity

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no "no threshold number of Class Members that automatically satisfies this requirement … [g]enerally, 40 or more members will satisfy the numerosity requirement." *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1326–27 (W.D. Wash. Apr. 10, 2015) (citations omitted). Here, because the Settlement Class includes approximately 1,922 seafood processing employees, joining all Settlement Class Members would not be practical, and numerosity is satisfied.

#### b) Commonality

Questions of law or fact common to the class required under Rule 23(a)(2) are present here. Class wide resolution "means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). A plaintiff satisfies the commonality requirement by demonstrating the presence of issues common to all proposed Class Members. *Collins v. Gee W. Seattle, LLC*, No. C08-0238 MJP, 2009 WL 10725362, at *3 (W.D. Wash. May 11, 2009). Courts construe the commonality requirement permissively, and all questions of law and fact need not be common to satisfy subsection 23(a)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 564 U.S. at 369.

Common questions of fact at issue here include whether Class Members were required to wear specific categories of gear, whether Class Members were required to don their gear prior to clocking in, and whether Class Members were required to doff their gear after clocking out. These questions depend only on the Class Members' job duties and the nature of Defendant's policies and procedures, which will be proven using generalized evidence applicable to the entire class.

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ                 15                 Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

A common question of law vital to Plaintiff's claims asks whether certain items of gear meet the test for "integral and indispensable" for all Class Members. *See, e.g., Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434 (W.D. Wis. May 5, 2008) (conditionally certifying FLSA class under 29 U.S.C. § 216(b) and state law claims for unpaid wages/overtime under FRCP 23(b)(3) based on failure to pay wages for time spent by meat processing plant workers donning and doffing personal protective equipment such as footwear, hair nets, beard nets, protective headgear, polyester frocks, and, for some, safety glasses and cotton shirts); *see also Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 906–07 (9th Cir. 2004); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003). These questions common to the Class satisfy the commonality factor for class certification.

### c)    Typicality

Rule 23(a)(3) requires Plaintiff's claims be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). Claims are typical "if they are reasonably co-extensive with those of absent Class Members" and "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff's claims stem from the same conduct alleged to have affected and injured the Settlement Class Members, thereby satisfying the typicality requirement. As described above, Defendant allegedly denied Plaintiff and Class Members rightful wages for the time spent retrieving, donning, and doffing work gear on a daily basis—a claim brought on a class wide basis. Therefore, Plaintiff's claims are typical of the class.

### d)    Adequacy

The adequacy requirement is satisfied where a representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. Rule 23(a)(4). Two questions of adequacy are evaluated in the Ninth Circuit courts: "(1) do the named plaintiffs and their counsel

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

16

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

have any conflicts of interest with other Class Members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. When these questions are considered here, both weigh in favor of class certification.

First, Plaintiff's and Class Counsel's interests are aligned and do not conflict with those of the Class. This shared interest includes recovering compensation for the wage and hour violations that Plaintiff alleges were suffered by the whole Class.

Second, Plaintiff and Class Counsel incessantly prosecuted this action in alignment with the interests of the Class. Plaintiff provided Class Counsel with documents, photographs, and videos—all of which were critical in the negotiation of a class wide settlement. Dharap Decl, ¶ 9. Class Counsel investigated and litigated this case for over two years, including defeating a motion to compel arbitration at the district court level, engaging in oral argument to the Ninth Circuit, and reviewing data and documents throughout contentious negotiations. Dharap Decl., ¶¶ 4–12.

Lastly, Class Counsel have extensive experience in prosecuting employment class actions and have been approved as class counsel in multiple class actions in state and federal courts. Dharap Decl., ¶ 22. Their experience and efforts ultimately resulted in a settlement that is fair, reasonable, and adequate. Dharap Decl., ¶¶ 11–14, 17, 21. Accordingly, Plaintiff and Class Counsel satisfy the adequacy requirements.

### 2.    The Class Merits Certification under Rule 23(b)(3) for Settlement Purposes

Class action and other complex litigation settlements are favored by federal courts. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). This class action suit brought on behalf of employees against their shared employer is appropriate for Settlement because both the predominance and superiority prongs are satisfied. *See* Fed. R. Civ. P. 23(b)(3). Under the predominance prong of Rule 23(b)(3), "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Here, common questions predominate over any individualized

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

17

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

inquiries because the workers' claims will all succeed or fail based upon the resolution of the same issues pertaining to the Defendant's conduct.

Under the superiority prong of Rule 23(b)(3), the court determines "whether the objectives of the particular class action procedure will be achieved in the particular case." *Id.* at 1023. Here, the superiority prong is met because the objectives of the proposed class—to resolve the employment dispute without duplicative individual actions—will be achieved by the proposed Settlement. Accordingly, the Court should certify the Settlement Class under Rule 23(b)(3) for purposes of settlement.

### 3. The Settlement Class Should Be Certified as a Collective Action under the FLSA Because It Meets Class Certification Requirements

A collective action under the FLSA may be maintained where a "similarly situated" employee opts into the action. 29 U.S.C. § 216(b). As discussed above, Plaintiffs meet the more stringent requirements for class certification under Rule 23 for settlement purposes, such that the "similarly situated" requirement of the FLSA is necessarily satisfied. *See Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011) ("Each tier of FLSA certification is 'considerably less stringent than the requirement of Rule 23(b)(3) that common questions predominate.'") (internal citations omitted). Moreover, the Settlement provides a separate procedure to Settlement Class Members regarding their FLSA claims and options in the Settlement. Specifically, the notice provided that FLSA plaintiffs who wish to share in the portion of the FLSA Settlement proceeds must timely submit a written opt-in notice to the Settlement Administrator. *See* Salinas Decl., ¶¶ 13–17. The notice included an opt-in form provided to putative FLSA plaintiffs, which was also available on Phoenix's website in downloadable form and could be submitted electronically. Salinas Decl., ¶¶ 13, 23. This form is consistent with the requirements of the FLSA and the jurisprudence relating to collective and hybrid actions involving both FLSA and non-FLSA claims. *See Beltran v. Olam Spices & Vegetables, Inc.*, No. 18-cv-1676, 2021 WL 1105246 (E.D. Cal. Mar. 23, 2021); *Hudson v. Libre Tech. Inc.*, No. 18-cv-1371, 2019 WL 5963648 (S.D. Cal. Nov. 13, 2019); *Smith v. Kaiser Found. Hosps.*, No. 18-cv-780, 2019 WL

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

18

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

5864170 (S.D. Cal. Nov. 7, 2019); *Johnson v. Quantum Learning Network, Inc.*, No. 15-CV-5013, 2016 WL 8729941 (N.D. Cal. Aug. 12, 2016).

### C.    The Notice Disseminated Met All Applicable Requirements

Before a class settlement is finally approved, the federal rules require notice to be directed "in a reasonable manner to all Class Members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and it must "clearly and concisely state in plain, easily understood language" several components of the action and the settlement. Fed. R. Civ. P. 23(c)(2)(B). Here, the Court lent close oversight to the entire notice program, including instructed amendments to the notice regarding content, methods of distribution, and an extended notice period, evincing compliance with Rule 23 notice requirements.

### 1.    Reasonable Efforts Taken to Identify Class Members

The Court entered an order granting preliminary approval of the Settlement on November 9, 2023, after the parties met and conferred to address multiple issues raised by the Court. Dkts. 58, 65, 68, 69. On December 22, 2023, Phoenix distributed initial notices to Class Members informing of the Settlement by U.S. Mail, by text message and by email to UniSea for printing and hand-delivery to current employees in Dutch Harbor. One thousand and fourteen (1,014) Class Members were mailed notices via U.S. first class mail in English, 103 notices were sent via email to UniSea for printing and distribution to current employee Class Members at UniSea's Dutch Harbor facility, and 34 Class Members who did not have a mailing address on file were sent text messages. Salinas Decl., ¶¶ 7–8; *see also* Rodea Decl. (describing UniSea's Distribution of class notices to current employees in December 2023).

However, on March 26, 2024—after the deadline to opt-in, opt-out, and/or object had passed—Phoenix alerted Class Counsel that 767 Class Members for whom notice was to be emailed were never emailed the class notice, and consequently, these Class Members were never informed of the Settlement. Dkt. 77; *see also,* Dharap Decl. ¶ 20, Salinas Decl., ¶ 12. Therefore, Class Counsel proposed a corrective notice program to the Court which included emailing a

revised notice to the 767 individuals who were not notified and sending Class Members via text, email and/or mail a corrective notice informing of 1) a new date for Final Settlement Approval Hearing, 2) a new notice period, and 3) new deadlines for opt-ins, opt-outs, and objections. The Court approved the corrective notice program on April 17, 2024. Dkt. 81; *see also* Dharap Decl., ¶ 20.

On April 24, 2024, Phoenix sent out corrective notices via mail, email, or text to Class Members in accordance with the Court-approved notice program. Salinas Decl., ¶¶ 13–17; *see also* Declaration or Charlotte Liwag Regarding Delivery of Corrective Notices to Current Employees ¶¶ 2–5. One hundred and sixty notices were returned to Phoenix. Salinas Decl., ¶ 9. Of the 160 returned notices, 150 were remailed and 10 notices remain undeliverable. *Id.,* ¶¶ 9–10. Phoenix received 6 exclusion requests from AWHA Class Members before March 1, 2024 and another 6 by August 30, 2024. *Id*. ¶¶ 11–13. Phoenix received 39 opt-ins from FLSA Class Members, and zero objections of the Settlement. *Id.* The corrective notice program properly informed as many Class Members as practicable of the nature of the action; the class definition; the class claims, issues, or defenses; that the Class Member may appear through counsel; that the Court will exclude from the Class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on Class Members. Fed. R. Civ. P. 23(c)(2)(B).

### 2. Due Process Rights of Class Members Were Adequately Protected

Under Rule 23, several requirements must be met to protect the due process rights of Class Members, including adequate notice sent by reasonable means that apprises Class Members of the pendency of the action and informs of their opportunity to object or opt out. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

Here, the notice and means by which notice was delivered were approved by the Court. Because Phoenix failed to deliver the initial notice to Class Members, Class Counsel reconstructed a notice program approved by the Court. Dharap Decl., ¶ 20. This notice program ensured effective delivery of the notice to most Class Members via mail, email, cell phone and telephone. *See In re Prudential Ins. Co. of America Sales Practices Litigation*, 177 F.R.D. 216,

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

20

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

231 (D.N.J. 1997) (courts have consistently recognized that due process does not require that every Class Member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties). Furthermore, the notice provided information regarding the nature of the pending litigation, the general terms of the settlement, where to access case information and court files, and the rights of Class Members to appear and be heard at the fairness hearing. Therefore, the Settlement protected the due process rights of the Class Members.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an Order granting Final Approval, certifying the Settlement Class under Rule 23, certifying the collective action under the FLSA, approving Class Counsel's petition for fees and costs, and entering judgment as provided under the Settlement Agreement.

Dated: September 26, 2024

I certify that this memorandum contains 7331 words, in compliance with the local civil rules.

**TOUSLEY BRAIN STEPHENS PLLC**

*s/ Kim D. Stephens, P.S.*
Kim D. Stephens, P.S. WSBA #11984
kstephens@tousley.com
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600
Fax: (206) 682-2992

**ARNS DAVIS LAW**

Shounak S. Dharap, *pro hac vice*
ssd@arnslaw.com
Katherine A. Rabago, *pro hac vice*
kar@arnslaw.com
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

PLAINTIFF'S MOTION
FOR FINAL APPROVAL
OF CLASS SETTLEMENT
CASE NO. 2:21-cv-00359-TSZ

21

Tousley Brain Stephens PLLC
1200 Fifth Ave, Ste 1700
Seattle, WA 98101
Tel.: (206) 682-5600

1

2      **ERICKSON KRAMER OSBORNE LLP**

3      Kevin Osborne, *pro hac vice*
       kevin@eko.law
4      Julie Erickson, *pro hac vice*
       julie@eko.law
5      Elizabeth Kramer, *pro hac vice*
       elizabeth@eko.law
6      44 Tehama Street
       San Francisco, CA 94105
7      Tel: 415-635-0631
       Fax: 415-599-8088
8

9      *Counsel for Plaintiff and the Settlement Class*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28     PLAINTIFF'S MOTION              22        Tousley Brain Stephens PLLC
       FOR FINAL APPROVAL                        1200 Fifth Ave, Ste 1700
       OF CLASS SETTLEMENT                       Seattle, WA 98101
       CASE NO. 2:21-cv-00359-TSZ                Tel.: (206) 682-5600